NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-720


LESLIE RENEE BOAGNI ELSBURY

VERSUS

ERNEST RAY ELSBURY, IV


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20172013
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**CANDYCE G. PERRET**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, John D. Saunders, and Candyce G. Perret, Judges.


**AFFIRMED.**

**Alfred Frem Boustany, II**
**Post Office Box 4626**
**Lafayette, LA   70502**
**(337) 261-0225**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Leslie Renee Boagni Elsbury**

**Leslie Renee Boagni Elsbury**
**In Proper Person**
**5042 North University Avenue**
**Carencro, LA   70520**
**(337) 224-0317**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Leslie Renee Boagni Elsbury**

**Jack Derrick Miller**
**Post Office Drawer 1650**
**Crowley, LA   70526**
**(337) 788-0768**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Ernest Ray Elsbury, IV**

**Matthew H. Long**
**Law Office of Jack Derrick Miller**
**415 North Parkerson Avenue**
**Crowley, LA   70527-1650**
**(337) 788-0768**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Ernest Ray Elsbury, IV**

**Nicole B. Breaux**
**Attorney at Law**
**415 North Parkerson Avenue**
**Crowley, LA   70526**
**(337) 783-0888**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Ernest Ray Elsbury, IV**

**PERRET, Judge.**

In this divorce action, Leslie Boagni-Elsbury ("Leslie") appeals a trial court judgment that granted her interim spousal support in the amount of $500.00 per month. For the following reasons, we affirm.

**FACTS:**

Leslie and Ernest Elsbury ("Ernest") were married on November 18, 2001. There were no children born of their marriage, although Leslie had one child from a previous relationship. On April 6, 2017, Leslie filed a petition for divorce wherein she requested interim periodic spousal support. Leslie and Ernest were judicially divorced on November 30, 2017, and, after a hearing on December 18, 2018, Leslie was found legally free from fault for the divorce.

A Hearing Officer Conference was held on August 9, 2017, and, after hearing all of the facts and testimony, the Hearing Officer recommended that Leslie be awarded spousal support in the amount of $400.00 per month. On August 14, 2017, Leslie filed an objection to the interim spousal support recommendation.

On May 31, 2019, a trial was held on the issue of interim spousal support.[1] After hearing the parties' testimony, the trial court provided the following oral reasons for awarding Leslie $500.00 a month in interim spousal support:

> I am leaning towards finding that the claiming spouse [Leslie] has proven that she lacks sufficient income to maintain the standard of living she enjoyed during the marriage, prior to separation, and that [Ernest] has the ability to provide support for the interim.
>
> I am thinking that, while [Leslie] was not fully employed at the time of the hearing, I mean, I understand that she was bringing in about $250 a week for providing care for her mom, who needed it. She did have the ability to earn an income, because she had previously worked as an insurance agent and made a good living at one point.
>
> But as we got closer to the separation in time, she was only bringing in about $35,000 a year. One of the problems with her being

---

[1] On the morning of trial, Leslie agreed to dismiss her permanent support claim.

able to earn at the time of the separation was that she had lost her appointment with AIG and she didn't have the immediate resources necessary in order to support her career as an insurance agent.

I heard a lot about having that money there, available cash as well as an office and a laptop and all these other things. But the main skill that she needed as an insurance agent was not obsolete and was still of use to her, although she chose to focus her time and attention on her mother -- on her mom, which is very admirable, her mom's welfare.

I think that it is looking, from what I saw today, her expenses probably averaged about $3,500 a month at the time of the separation. And had she been working as an insurance agent, she probably would have been bringing in close to $3,000, making a difference of $500. And I am inclined to award interim support of $500 to make up the difference.

So if y'all want to argue about that before I make my final ruling, I will be more than happy to entertain argument at this time. But looking at the evidence and what's been presented to me -- I mean, I know that she had the ability to work. But I am worried that she didn't have the readily resources available. So I think she deserves something.

. . . .

For the record, I hereby find that the claimant spouse, [Leslie], has proven that she lacked a sufficient income to maintain the standard of living that she enjoyed during the marriage, until the -- just prior to the separation.

I find that [Leslie] was not fully employed at the time of the separation because, even though she was a licensed insurance agent, all of her employment efforts were being put towards the care of her mother, where she earned about an average of $250 a week.

[Leslie] -- this Court does find that [Leslie] did previously work as an insurance agent, with the ability to earn a nice amount towards living, but near the time of separation was only bringing in about $35,000 a year.

Due to her losing her appointment with AIG and not having the necessary resources immediately available to her at the time of the separation to be able to immediately go back to work as an insurance agent, I hereby find that she is entitled to some relief and that would be the difference of her income -- her average income and her expenses.

So I hereby find that she had the potential to make income of [$]3,000 a month, her expenses were [$]3,500 a month as an average, and find that the interim support of $500 is sufficient in this case.

2

On June 20, 2019, the trial court issued a signed judgment in favor of Leslie, and against Ernest, ordering Ernest to pay "interim spousal support in the amount of $500.00 per month, commencing on April 6, 2017, the date of judicial demand, subject to a credit for any sums previously paid, with legal interest on each sum due from the date each installment became due until paid, and all court costs." Leslie now appeals this judgment.

**STANDARD OF REVIEW:**

In a divorce proceeding, a "court may award an interim periodic support allowance to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage." *Evans v. Evans*, 49,160, p.3 (La.App. 2 Cir. 6/25/14), 145 So.3d 1093, 1094. "In determining an award of interim spousal support, the trial court is vested with wide discretion, which will not be disturbed absent a clear abuse of that discretion." *Piccione v. Piccione*, 01-1086, pp. 8-9 (La.App. 3 Cir. 5/22/02), 824 So.2d 427, 432. "Encompassed within this 'wide discretion,' is the ability of the trial court to examine a spouse's entire financial condition, which is not limited only to income, but also any resource from which the wants of life can be supplied, including a spouse's earning capacity." *Smoloski v. Smoloski*, 01-0485, pp. 4-5 (La.App. 3 Cir. 10/3/01), 799 So.2d 599, 602.

**DISCUSSION:**

On appeal, Leslie argues that the trial court erred in awarding interim spousal support in the amount of $500.00 per month and that she "should have been awarded at least [$]2,000.00 of interim spousal monthly[.]" In response, Ernest alleges that Leslie failed to produce any evidence of her monthly expenses and that she benefited from the trial judge's "determination of her monthly income and/or earnings

potential at $3,000.00 per month, as the record supports an amount of monthly income much higher."

This court discussed the purpose of interim spousal support in *Derouen v. Derouen*, 04-1137, pp. 3-4 (La.App. 3 Cir. 2/2/05), 893 So. 2d 981, 984 (internal citations omitted), which states, in pertinent part:

> The Louisiana Civil Code's regulations on interim spousal support are "designed to assist the claimant spouse in sustaining the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce." A spouse's right to claim interim periodic support "is grounded in the statutorily imposed duty on spouses to support each other during marriage, and thus, provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation." Interim support preserves parity in the levels of maintenance and support, and avoids "unnecessary financial dislocation until a final determination of support can be made."

In awarding interim spousal support, the trial court is guided by La.Civ.Code arts. 111 and 113. Louisiana Civil Code Article 111 provides the following:

> In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage in accordance with the following Articles.

At the time Leslie filed for interim spousal support in 2017, Louisiana Civil Code Article 113 read as follows:[2]

> A. Upon motion of a party or when a demand for final spousal support is pending, the court may award a party an interim spousal

---

[2] In 2018, the legislature amended and simplified La.Civ.Code art. 113, which now reads:

> A. Upon motion of a party, the court may award a party interim spousal support based on the needs of that party, the ability of the other party to pay, any interim or final child support obligation, and the standard of living of the parties during the marriage. An award of interim spousal support shall terminate one hundred eighty days from the rendition of a judgment of divorce, except that the award may extend beyond one hundred eighty days but only for good cause shown.
>
> B. An obligation to pay final periodic support shall not begin until an interim spousal support award has terminated.

support allowance based on the needs of that party, the ability of the other party to pay, any interim allowance or final child support obligation, and the standard of living of the parties during the marriage, which award of interim spousal support allowance shall terminate upon the rendition of a judgment of divorce.

B. If a claim for final spousal support is pending at the time of the rendition of the judgment of divorce, the interim spousal support award shall thereafter terminate upon rendition of a judgment awarding or denying final spousal support or one hundred eighty days from the rendition of judgment of divorce, whichever occurs first. The obligation to pay interim spousal support may extend beyond one hundred eighty days from the rendition of judgment of divorce, but only for good cause shown.

C. Notwithstanding Paragraph B of this Article, if a claim for final spousal support is pending at the time of the rendition of a judgment of divorce pursuant to Article 103(4) or (5) and the final spousal support award does not exceed the interim spousal support award, the interim spousal support award shall thereafter terminate no less than one hundred eighty days form the rendition of judgment of divorce. The obligation to pay final spousal support shall not begin until after an interim spousal support award has terminated.

At the interim support hearing, Craig Lebouef, an expert in accounting, testified that, according to the tax returns, Ernest's 2016 "adjusted gross income was $82,235[,]" and in 2017, "his adjusted gross income was $86,539." Mr. Lebouef also testified that Leslie's 2016 tax return indicated that her "adjusted gross income was $30,460[,]" and that "[h]er total income in [20]17 was $11,580."

Ernest testified at trial that he has a degree in chemical engineering and that throughout his marriage, he worked as a chemical engineer and a consultant. Ernest testified that his average income during the seventeen years he was married to Leslie was between "seventy-two to eighty-four" thousand dollars a year.

Leslie testified that she does not have a college degree but that she received her "insurance C license in 2002[.]" Leslie testified that she started working as an insurance agent in 2002 and that she made the most money from "2005 through 2009, '10, maybe '11" as a sales manager. Leslie testified that she was making about

5

$100,000.00 a year at the peak of her insurance career and that she and Ernest together were making about $200,000.00 per year. Leslie testified that the insurance industry began to slow down in 2013-14, and that she began working primarily out of the home around that time. In 2015, Leslie testified that she began taking care of her mother, who was recovering from a hip replacement, and that her salary for that year dropped to $30,195.00. In early 2017, Leslie testified that her mother had a stroke and that she became the primary caregiver of her mother, which caused her to work even less. Leslie testified that she was paid $250.00 per week for taking care of her mother.

Leslie filed for divorce on April 6, 2017, and testified that she was served with a protective order two weeks later. Because of the protective order, Leslie testified that she and her seventeen-year-old son were forced out of the family home without clothes, computers, or money. After being evicted from the home, Leslie described that point of her life as living in "survival mode" and that she was not maintaining the style of life she had been accustomed to living while with Ernest. Leslie described her life after the eviction from the family home as follows:

> Q.    -- after you were evicted from your house, did you have any money?
>
> A.    No. I had nothing.
>
> Q.    Could you go back to the insurance industry and work?
>
> A.    No. I didn't even have clothes. I was wearing my son's clothes.
>
> Q.    Did anyone ever give you – I'm sorry. Did you have access to that computer that was in Mr. Elsbury's [home] office?
>
> A.    No.
>
> Q.    Did you have access to some kind of laptop that you could work off of?

A.    No.

Q.    Did you -- did you have – let's talk about -- in the Air B&Bs that you were staying at, did you have Internet access at all of them?

A.    No.

Q.    So was it possible to work like you did when you were in Mr. Elsbury's house?

A.    Definitely not.

On cross-examination, Leslie testified that she is still an independent insurance agent but that she is currently unemployed. Leslie testified to her earnings from 2002-2016 and her W-2s were submitted into evidence. Specifically, Leslie testified as follows:

Q.    Ms. Boagni [Leslie], would you agree that, in 2005, you earned $125,693.02?

A.    Probably so.

Q.    And in 2006, you earned $113,634.72?

A.    That's probably right.

Q.    And in 2007, you earned $105,647.72?

A.    That is right.

Q.    2008, you earned $94,043.97?

A.    What year, 2008?

Q.    2008, yes.

A.    Yes.  That's right.

Q.    You would agree?  2009, you earned $130,769.53?

A.    Correct.

Q.    2010, you earned $100,519.05?

A.    Correct.

Q.    2011, you earned $116,187.78?

A.    Correct.

Q.    2012, you earned $68,846.47?

A.    Yes.  That's when I moved up to a higher position.  That is correct.

Q.    Okay.  In 2013, you earned $97,777.86?

A.    Correct.

Q.    In 2014, you earned $80,392.38?

A.    It sounds right.

Leslie also agreed that "Mr. Elsbury [Ernest], through [his counsel], offer[ed] [her] numerous dates and numerous times to be able to get [her] personal belongings and [that she] never retrieved them[.]"

The trial court, in the reasons for judgment, found that Leslie had the potential to make income of $3,000.00 a month as an insurance agent, and that based on the evidence presented, she had monthly expenses in the amount of $3,500.00.  Without more evidence in the record, we find the trial court was well within its discretion in arriving at these figures for Leslie's potential income and her expenses.  Thus, we find that the record supports the findings of the trial court and that given the applicable standard of review, and the deference that must be given to factual determinations made by the trial court, there was no clear abuse of discretion in awarding Leslie interim support of $500.00 per month.

For these reasons, we affirm the June 20, 2019 judgment awarding Leslie interim spousal support in the amount of $500.00 per month.  Each party is to pay their own costs on appeal.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

8